## The Lake Street Elevated R. R. Co. v. John V. Peterson.

1. RAILROADS—*Evidence of the Emission of Sparks by Engines, when Admissible.*—When an engine which is claimed to have emitted sparks is identified, evidence of the emission of sparks by other engines at other times is inadmissible; but when such engine is not satisfactorily identified such evidence is admissible.

2. SAME—*When the Engine is Not Identified.*—Where the engine alleged to have caused the fire is not satisfactorily identified, it is competent for the plaintiff to sustain or strengthen the inference that the fire originated from the engine claimed, by proving that the locomotives of the defendant generally, or many of them, at or about the time in question, threw sparks or kindled fires upon the portion of its road in question.

· Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed January 24, 1901.

CLARENCE KNIGHT and WILLIAM G. ADAMS, attorneys for appellant.

MATTHEW P. BRADY, attorney for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellant's elevated street railway is constructed over and along Lake street, in the city of Chicago. The West Chicago Street Railroad Company has constructed and has in operation a street railway, operated by horses, along Lake street, underneath the railway of appellant. Appellee was a driver in the employ of the last named company, and in his declaration claims that September 1, 1895, while he was driving a street car of the last named company on and along Lake street, under appellant's railway, a hot cinder dropped from one of appellant's engines, which was operated by steam produced by burning coal, and fell on his, appellee's, right eye, and destroyed his sight, and that, in order to preserve his left eye, which was sympathetically affected, it became necessary to have the right eye entirely removed, which was done.

Appellee was the only witness who testified that the cinder which injured his eye fell from appellant's engine, and evidence was produced by appellant tending to prove that appellant used proper devices to prevent the dropping or escape of cinders or fire from its engines, and that its engines were properly and carefully managed. Appellee produced a number of witnesses who testified, over the

objection of appellant's attorney, that they had seen sparks and cinders, at times before and after the accident in question, fall from engines of appellant on the horse railway track.

The following questions were asked of and answers given by appellee's witnesses :

Question to witness Kegle :

" Q. Did you ever know of cinders and ashes falling from these locomotives as they passed over that street structure ? A. Yes. Those cinders and ashes fall from those locomotives quite often."

Van Reekum having testified that he drove a horse-car on Lake street in 1893, and drove on the street four and one-half years, was asked :

" Q. Now, during that time, did you know of cinders falling from engines on the elevated structure on Lake street ? A. Yes, sir, I did. I had a hot cinder in my eye during that time. Burnt a hole in it. I got the hot cinder in my eye about 1896; I think it was in the summer of 1896. It was on Lake street. It was at night."

Questions to the same witness :

" Q. Besides the time that you mentioned yesterday, was there any times when you knew of the falling of cinders from the elevated structure on Lake street ? A. Yes, sir; quite frequently.

Q. By night and by day ? A. Yes, sir."

To James Martin :

" Q. Do you know anything about the falling of cinders from the elevated structure on Lake street ? A. I have seen cinders fall there. Yes, sir."

Alfred Granthan, having testified that he drove a horse-car on Lake street from some time in March, 1893, till some time in January, 1896, was questioned and answered as follows :

" Q. During the time you were driving a street-car on West Lake street, did you see—did you know anything about—learn anything about the falling of hot cinders from the elevated structure ? A. I have often seen them fall. Yes, sir."

Horace Roberts having testified that he worked as loco-motive engineer for appellant from some time in October, 1893, until April 5, 1897, was questioned and answered thus .

"Q. Now, during the years 1894, 1895 and 1896, or either of them, did you see any cinders—hot cinders, sparks, fall from the engines on the Lake street elevated railroad ? A. Yes, sir, I did.

Q. During the time you was working on that road did you know of any fire occurring upon the roadway—the ties of the road itself ? A. Yes, sir."

The rule is that when the engine which is claimed to have emitted sparks is identified, evidence of the emission of sparks by other engines, at other times, is inadmissible; but when the engine which is claimed to have emitted sparks is not satisfactorily identified, such evidence is admissible. First Nat. Bank v. L. E. & W. R. R. Co., 174 Ill. 36.

In the present case we can not say from the evidence that the engine from which it is claimed the cinder which injured appellee's eye fell, was satisfactorily identified so as to exclude evidence of cinders falling from other engines at other times. The question, however, remains, whether the evidence was, as appellant's counsel contend, too remote from the time of the accident.

In Henderson v. Railroad Co., 144 Penn. St. 461, cited with approval by the court in the First National Bank v. Railroad Co., *supra*, the court say :

' "It may, therefore, be considered as settled in cases of this kind, where the offending engine is not clearly or satisfactorily identified, that it is competent for the plaintiff to prove that the locomotives generally, or many of them, at or about the time of the occurrence, threw sparks of unusual size, and kindled numerous fires upon that part of their road, to sustain or strengthen the inference that the fire originated from the cause alleged."

In the same case the court say :

"But the objective point of the inquiry is the condition of the passing engines at the time of the occurrence. It is a matter of little consequence what may have been their condition ten years or two years before that; for the precautions against fire, and the management of the engines, may have been greatly changed within that period. It does not follow because the company, in its official management, may have been negligent in this respect at a time so remote, that it still remains so. The habits of individuals may, in

some sense, be spoken of as fixed habits; but the official control and management of the affairs of a railroad company, as well as the various devices used as precautions against danger, are liable to frequent and radical changes. The line must be drawn somewhere. This class of testimony is exceptional in character at the best, and is only admissible because the ordinary sources of proof are inaccessible, and direct evidence impracticable. The rule should not, therefore, be carried beyond the necessity which justifies its admission. If at or about the time when fires are alleged to have been set by locomotive engines, unknown by number or other means of identification, the company is shown to have been habitually negligent in the equipment or management of its engines, or of many of them, this is a circumstance to be considered in connection with others, not only in determining the origin of the fire, but in deciding whether or not the company was, at the time, in this, as in many other instances, negligent in failing to provide suitable precautions against danger. If many of the company's engines, at or about the time, are without sufficient spark-arresters, and frequent fires are kindled in consequence, it may well be inferred, in view of the effectual character of mechanical inventions of this kind, not only that the fire in question originated from this cause, but that it occurred from the habitual negligence of the company in failing to provide sufficient spark-arresters. Reasonable latitude must, of course, be allowed. The purpose of such proofs would be defeated if they were confined to the exact or precise time of the occurrence. In Stranahan's case, the court admitted proof of the extent to which the various locomotives of the company threw sparks on or about the ninth (sixth) of November, 1867, when the fire occurred. In Gower v. Glaser the inquiry was as to sparks thrown and fires set very shortly before and very shortly after the occurrence. In Sheldon v. Railroad Co., *supra*, the inquiry was restricted to matters occurring about the time and near the place of the fire."

The offer of the plaintiff, in the Pennsylvania case cited, was to prove that the property of other persons along the line of the defendant's road, within twelve miles of the plaintiff's property, had been destroyed by fire from the defendant's engines. The trial court excluded the offered proof, and the Supreme Court held the ruling correct, on the ground that the offer was unlimited as to time.

In Galveston, etc., R. R. Co. v. Rheiner, 25 S. W. R. 971 (Texas), decided in 1894, the court say :

" It was error to admit testimony to be introduced in regard to other fires caused by appellant's engines years before the fire in question took place. Appellant may have changed the appliances on its engines in that time, and the circumstances may have been totally different under which the fires took place; and it would be rank injustice to have a jury presume negligence, in this instance, because two or three years before other fires had occurred along the line of appellant's railway."

In Jones on the Law of Evidence, section 164, the rule is thus stated :

" The rule supported by the weight of authority and by the better reasoning is, that where the engine alleged to have set the fire is not satisfactorily identified, it is competent for the plaintiff to sustain or strengthen the inference that the fire originated from the cause alleged, by proving that the defendant's locomotives, generally, or many of them, at or about the time of the occurrence, threw sparks or kindled fires upon that portion of the road."

In a note to Burroughs v. Housatonic R. R. Co., 38 Am. Dec. 70, Freeman, the editor, writes :

" It is generally held that in actions for damages from fires caused by sparks from locomotives, the plaintiff may introduce evidence to show that, about the time the fire in question happened, the engines of the defendant running past the location of the fire were in such a condition, or were so managed, as to be likely to set fire to objects in the position of the property burned, or that sparks were emitted by other engines of the company about that time and set fire to other property similarly situated," etc., citing numerous cases.

In the present case some of the questions asked and answers given, quoted *supra*, were without limit as to time or place. Other questions and answers included times from fourteen months to more than two years distant from the time of the accident. While a reasonable latitude should be allowed, evidence without limit as to time, and evidence of occurrences at times so remote from the time of the accident, is inadmissible under the rule stated *supra*, and is,

as we think, unreasonable. The case was sufficiently close on the evidence to render it highly important that incompetent evidence to the prejudice of either party should not have been admitted. For the error indicated the judgment will be reversed and the cause remanded.